UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| POWERbahn, LLC,<br><br>　　　　　　　　　　　Plaintiff,<br>　v.<br>Foundation Fitness LLC, Wahoo Fitness L.L.C., and Giant Bicycle, Inc.,<br><br>　　　　　　　　　　　Defendants. | Case No. 3:15-cv-00327-MMD-WGC<br><br>ORDER<br><br>(Defs.' Motion to for Judgment on Pleadings – ECF No. 54) |

**I.　SUMMARY**

Plaintiff POWERbahn, LLC ("POWERbahn") alleges that Defendants Foundation Fitness, LLC ("Foundation"), Wahoo Fittness, L.L.C. ("Wahoo"), and Giant Bicycle, Inc. ("Giant") infringed on several of its patents related to exercise equipptment utilizing its virtual flywheel technology. (ECF No. 1.) Foundation and Wahoo (collectively, "Defendants") seek judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), arguing that POWERbahn's patents are invalid as a matter of law. (ECF No. 54.) In addition to Defendants' Motion for Judgment on the Pleadings ("Motion") (ECF No. 25), the Court has reviewed POWERbahn's response (ECF No. 59), and Defendants' reply (ECF No. 60). For the reasons discussed below, the Court will deny the Motion.

**II.　BACKGROUND**

POWERbahn holds several patents disclosing technology which enables stationary exercise bicycles to mimic the resistance that a bicyclist would feel if she were actually riding outdoors. The technology, which POWERbahn calls a virtual flywheel, is

1  claimed in U.S. Patents Nos. 7,066,865 ("the '865 patent"), 7,862,476, ("the '476
2  patent"), 7,841, 964 ("the '964 patent"), and 7,608,015 ("the '015 patent"). (ECF No. 1 at
3  1, 6-11.) POWERbahn alleges that Foundation has willfully violated each of these
4  patents and that Wahoo and Giant have directly infringed each. (*Id.*) Defendants argue
5  that POWERbahn's patents are invalid as a matter of law because they claim
6  unpatentable laws of nature. (ECF No. 54 at 2.)

## III.  LEGAL STANDARDS

### A.  Judgment on the Pleadings

A Fed. R. Civ. P. 12(c) motion for judgment on the pleadings utilizes the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted in that it may only be granted when it is clear to the court that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shull Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) (citations omitted). Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677, (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper [Rule 12(b)(6)] motion. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

### B.  Patentable Subject Matter and the *Alice* Standard

Under Section 101 of the Patent Act, an inventor may obtain a patent on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Courts, however, "have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The concern behind these excepted categories is "one of preemption" — if an inventor could obtain patent protection over these "building blocks of human ingenuity," then the patent scheme would work to undermine, not promote, future innovation. *Id.* at 2354. But courts are careful to balance concerns over preemption with the fact that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). Thus, where an invention moves beyond an abstract idea by applying it "to a new and useful end," the invention will meet the Section 101 standard. *Alice Corp.*, 134 S. Ct. at 2354 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

In light of these competing concerns, the Supreme Court has developed a two-part test to assess whether a patent covers an abstract idea. First, courts must determine whether a patent's claims are directed to a "patent-ineligible concept," such as an abstract idea. *Id.* at 2355. Abstract ideas may be "preexisting, fundamental truth[s]" such as mathematical equations, and also encompass "method[s] of organizing human activity" or "longstanding commercial practice [s]" like intermediated settlement or risk hedging. *Id.* at 2356.

Second, if the court "determine[s] that the patent is drawn to an abstract idea or otherwise ineligible subject matter," then the court examines "whether the remaining elements, either in isolation or combination with the non-patent-ineligible elements, are sufficient to 'transform the nature of the claim into a patent-eligible application.'"

3

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366-67 (Fed. Cir. 2015) (quoting *Alice Corp.*, 134 S. Ct. at 2358).

Whether a patent is eligible under § 101 is a question of law that may be determined at the dismissal stage. *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013) (reviewing a § 101 determination de novo, but noting that the legal issue on review "may contain underlying factual issues"); *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348-49 (Fed. Cir. 2015) (affirming a district court's granting of a motion to dismiss on § 101 grounds).

## IV. DISCUSSION

Defendants attack all four of POWERbahn's patents, arguing that each patent fails both lines of the *Alice* inquiry — that is, each patent is directed at an abstract idea and is not transformed by additional elements. Two of the patents are based on method claims and two are based on utility (in this case exercise equiptment) claims. The parties advanced similar arguments for and against the two types of claims. The Court will address each claim in turn.

### A. The '865 Patent

The '865 patent contains several different claims. Defendants point to claim 1 as representative (ECF No. 54 at 19), and POWERbahn points to claim 16 (ECF No. 59 at 5.) Claim 1 and claim 16 are similar, but claim 16 is slightly broader, making it more susceptible to Defendants' arguments. (See ECF No. 54 at 19 n.4.) The Court will therefore base its analysis on claim 16, which reads:

> 16. An apparatus for simulating forces and movement of a human subject during a physical activity, comprising:
> a base;
> a movable member mounted to the base, the movable member defining a velocity and receiving an input force applied to the movable member by a human subject;
> a force-generating device operably coupled to the movable member and applying a resistance force to the movable member;

4

>    a sensor configured to provide a signal corresponding to at least one of the velocity of the movable member and an input force applied to the movable member by a human subject; and
>    a controller configured to control the resistance force applied to the movable member by the force-generating device based, at least in part, on a signal provided by the sensor and a haptic equation incorporating an equation of motion of a human subject performing the physical activity being simulated.

(ECF No. 1-11 at 67 (61:25-62:7).)

The first step of the *Alice* test asks whether the claims at issue are directed to an abstract idea. *Alice Corp.*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Id.* (alteration omitted) (quoting *Benson*, 409 U.S. at 67). Even without clear guidelines defining what constitutes an abstract idea, the Supreme Court has "provided some important principles" through its § 101 jurisprudence. *DDR Holdings, LLC v. Hotels.com*, L.P., 773 F.3d 1245, 1256 (Fed. Cir. 2014). Courts should examine the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp.*, 790 F.3d at 1346.

Defendants argue that claim 16, and the '865 patent as a whole, are drawn to laws of nature, specifically focusing on the haptic equation mentioned in the last line of claim 16. (ECF No. 54 at 19.) This argument either grossly misreads the claims in the patent or stretches the rule in *Alice* beyond recognition. While it is true that the claim includes a formula, the claim is clearly directed at a piece of exercise equiptment, and the formula is simply one part of the overall scheme. Including a law of nature as one part of a claim does not transform the entire scheme into an abstract idea. *See Diamond v. Diehr*, 450 U.S. 175, 187, (1981) (including a mathmatcial formula in a process for curing synthetic rubber does not render it unpatentable); *see also Alice Corp.*, 134 S. Ct. at 2354 ("[A]n invention is not rendered ineligible for patent simply because it inovles an abstract concept."). The equation is used to calculate the amount of resistance applied by one part of the machine described, and the machine itself includes a number of different interacting parts. It is clearly distinguishable from the patents at issue in *Alice*

5

and *Mayo*, and also from the patents deemed inelligble by the Federal Circuit applying those decisions. *Cf. Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.,* 758 F.3d 1344, 1350 (Fed. Cir. 2014) (patent claimed an abstract idea because it described "a process of organizing information through mathematical correlations and is not tied to a specific structure or machine."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("[C]laims…squarely about creating a contractual relationship…are directed to an abstract idea.").

The Court finds that the claims in the '865 patent are not directed at abstract ideas, but rather tangible exercise apperatuses. Therefore, Defendants' argument fails the first prong of the two-step *Alice* test, and the Motion fails as it relates to the '865 patent.

**B.     The '476 Patent**

The '476 patent also contains several different claims. Defendants and POWERBahn agree that claim 1 is representative. (ECF No. 54 at 23; ECF No. 59 at 6.) Claim 1 reads:

> 1. An exercise device for simulating a human physical activity of the type involving an application of a human input force to an object resulting in acceleration of the object in a manner that is capable of being described by an equation of motion of the type that describes the acceleration of a mass under an influence of a force generated by a human in performing the activity, the exercise device comprising:
> a structural support;
> a user input member movably connected to the structural support for movement relative to the structural support to define a measured velocity that is measured during application of an input force to the input member by a user, and wherein the user input member defines a variable resistance force tending to resistmovement due to input force applied by a user;
> a control system that utilizes a velocity difference between the measured velocity and a virtual velocity as a control input to control the resistance force on the user input member, wherein the control system is configured to continuously and rapidly recalculate the virtual velocity while an input force is being applied to the input member by a user, and wherein the control system is configured to determine the virtual velocity, at least in part, utilizing an equation of motion of the type that describes the acceleration of a mass under an influence of a force for the human physical activity being simulated and wherein the control system is configured to continuously and rapidly recalculate the velocity difference while an input force is being applied to the input member by a user such that the

resistance force varies to simulate the changes in force experienced by a user due to changes in momentum of the human physical activity that is being simulated.

(ECF 1-12 at 43 (58:52-59:13).)

Defendants reiterate the same argument relating to the '476 patent. (ECF No. 54 at 24.) POWERbahn offers the same response. (ECF No. 59 at 6-7.) Usurprisingly, the Court reaches the same conclusion. The '476 patent is directed at tangible exercise apparatuses and incorporates an equation to simulate real world conditions by adjusting resistance. It is not directed at an abstract idea, and therefore it does not meet the first part of the *Alice* test. The Motion is denied with respect to the '476 patent.

**C.   The '964 Patent**

The '964 patent contains one independent method claim and several dependant claims. The parties agree that the method claim in claim 1 is representative. (ECF No. 54 at 21-22; ECF No. 59 at 7-8.) Claim 1 reads:

> 1. A method of controlling stationary exercise apparatus of the type having at least one movable component providing a simulation of a corresponding physical activity involving human motion, wherein the exercise apparatus is capable of controlling at least one of the movement and the resistance of the movable component to simulate the effects of changes in momentum that occur during the physical activity being simulated, the method comprising:
> determining an applied force that is applied to a component of the exercise apparatus by a user during use thereof by measuring an operating parameter of the stationary exercise apparatus that is related to an applied force that is applied to a component of the exercise apparatus by a user during use thereof;
> determining a virtual velocity of the physical activity being simulated, wherein the estimate of a target velocity comprises an estimate of a velocity that would occur during the physical activity being simulated if the applied force had been applied by a user during an actual physical activity;
> determining an actual velocity based on a measured velocity of the movable component of the stationary exercise apparatus;
> comparing the actual velocity of the virtual velocity; and controlling at least one of the movement and the resistance to movement of the at least one movable component to simulate the effects of changes in momentum based, at least in part, on the comparison of the actual velocity to the virtual velocity.

(ECF No. 1-13 at 65-66 (58:52-59:13).)

The claim describes a method for controlling exercise equiptment wherein the force of the user's movement is measured and run through a formula in order to

1  determine how much resistance should be applied to mimic real world conditions.
2  Defendants argue that the '964 patent simply describes a mathematical relationship, and
3  that the additional steps do not narrow or transform the non patentable idea into a
4  patentable invention. (ECF No. 54 at 12, 22.) POWERbahn argues that the '964 patent
5  is drawn to a specific method for controlling exercise equiptment, rather than an abstract
6  idea, and even if it were drawn to an abstract idea, the claim includes an inventive
7  concept which satisfies the second prong of the *Alice* analysis. (ECF No. 59 at 1-12.)

8        The method claim in the '964 patent is a closer call than the claims in the '865 and
9  '476 patents. It shares some characteristics with the patent struck down in *Mayo*. Both
10 patents claimed a method comprised of a small number of steps which included
11 measuring a phenomenom, running that measurement through a formula, and applying
12 the outcome in a relatively simple way. *See Mayo*, 132 S.Ct. at 1299.

13       However, the '964 patent, unlike the patent in *Mayo*, is not drawn to an abstract
14 idea. In applying the first *Alice* step, the Court needs to determine the nature or heart of
15 the claim. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 134 F. Supp. 3d 877, 897
16 (W.D. Pa. 2015) (collecting cases). In this case, the nature of the method claim is the
17 operation of a piece of exercise equiptment, like a treadmill, elliptical, or stationary bike,
18 in order to simulate the conditions of running or biking outdoors. Unlike other patents
19 which were determined to be directed at abstract concepts, the '964 patent is aimed at a
20 "particular concrete or tangible form." *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709,
21 715 (Fed. Cir. 2014), cert. denied sub nom. *Ultramercial, LLC v. WildTangent, Inc.*, 135
22 S. Ct. 2907 (2015). It does not simply describe relationships between naturally occurring
23 chemical relationships (*Mayo*, 132 S.Ct. at 1296) or long existant economic practices
24 (*Alice*, 134 S.Ct. at 2356). It describes a way of running a specific type of machine in
25 order to achieve a particular type of training. This is not the type of broad idea that
26 threatens to monopolize "basic tools of scientific and technological work" or "the building
27 blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354 (quoting *Myriad Genetics*, 133 S.
28 Ct. at 2116 and *Mayo*, 132 S.Ct. at 1301).

For these reasons the Court finds that the '964 patent is also not directed at an abstract idea. Defendants have not shown that the first *Alice* step is satisfied, and the Motion is denied with respsect to the '964 patent.

### D.     The '015 Patent

The '015 patent contains two independent claims, claim 1 and claim 10. The parties agree that claim 1 is representative. (ECF No. 54 at 9; ECF No. 59 at 8.) Claim 1 reads:

> 1. A method of controlling stationary exercise apparatus of the type having at least one movable component providing a simulation of a corresponding physical activity involving human motion, wherein the exercise apparatus is capable of controlling at least one of the movement and the resistance of the movable component to simulate the effects of changes in momentum that occur during the physical activity, the method comprising:
> determining an equation of motion for a physical activity involving human motion that is to be simulated by the exercise apparatus, wherein the equation of motion includes at least one term that accounts for changes in momentum and a corresponding force experienced by a human during the physical activity;
> determining a value of a variable corresponding to at least one of a user's mass, a velocity of the movable component of the exercise apparatus, and a force applied to a component of the exercise apparatus during use thereof;
> providing a controller;
> configuring the controller to control at least one of the movement and the resistance to movement of the at least one movable component to simulate the effects of changes in momentum based, at least in part, on a control parameter determined at least in part by the value of the variable and the equation of motion for the physical activity being simulated by the apparatus.

(ECF No. 1-14 at 65-66 (58:50-59:8).)

Defendants advance the same argument with respect to the '964 and '015 patents. (ECF No. 54 at 9-12, 22.) POWERbahn offers the same rebuttal. (ECF No. 59 at 9-10.) Once again, the Court reaches the same conclusion.

The '015 patent is not directed at an unpatentable abstract idea. The first *Alice* step is not satisfied and the Motion is denied with respect to the '015 patent.

### V.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

determines that they do not warrant discussion or reconsideration as they do not affect the outcome of Defendants' Motion.

It is therefore ordered that Defendants' Motion for Judgment on the Pleadings (ECF No. 54) is denied.

DATED THIS 11th day of August 2016

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE