# Exhibit A

# FACSIMILE COVER SHEET

| | |
|---|---|
| **TO:** | Pat Warner |
| | Holden Banks |
| **RE:** | POWERbahn Term Sheet |
| **TEL:** | |
| **FACSIMILE:** | 303-939-0260 0245 |

| | |
|---|---|
| **DATE:** | Friday, May 14, 2004 |
| Number of pages including cover sheet: | 5 |
| **FROM:** | SCOTT RADOW |
| **EMAIL:** | scottradow@earthlink.net |
| **TEL:** | 305-495-1524 |
| **Cell:** | |
| **FAX:** | 305-437-8025 |

**CC:**

**REMARKS:** ☐ Urgent   ☒ For your review   ☐ Reply ASAP   ☐ Please Comment

Dear Pat and Holden,

Thank you for preparing the attached Term Sheet. I have signed it for POWERbahn, LLC, and will be forwarding you a hard copy. Please send a version to me with your signature at the following address:

1508 Bay Road, N-235, Miami Beach, FL 33139

I look forward to getting started as soon as possible. Please call me when you issue the purchase order with the initial payment. POWERbahn, LLC can receive wired funds at:

Bank of America
A/C #: 005489513197
Routing #: 026009593

Regards,

Scott

**Term Sheet**

The following represents the mutual understanding between POWERbahn, LLC ("POWERbahn"), and The Nautilus Health and Fitness Group ("Nautilus")'.

Prototype

- Nautilus will pay POWERbahn to develop a prototype based on a Nautilus bicycle platform.

    o   The projected total cost will be $41,883 excluding shipping/handling costs. The projected total cost of $41,883 may include up to a 10% contingency fee covering unforeseen circumstances.
    o   A Purchase Order for the total cost of the project along with an initial payment of $10,000 will be due POWERbahn upon execution of this Term Sheet by POWERbahn and Nautilus.
    o   Remaining costs will be invoiced as the work is completed, on net 30 day terms, at approximately $10,000/month for three months.

- Prototype development will be the responsibility of POWERbahn.

    o   POWERbahn will be responsible for IP control and protection that emanates from prototype development, the costs of which shall be included in the projected total cost of $41,883 listed above. Such IP, including know-how and patent rights will become part of the Licensed Technology defined below and included in the License Agreement described below between Nautilus and POWERbahn.

- Nautilus will deliver three (3) electronically controlled bikes (model #) to POWERbahn. One bike will be shipped to POWERbahn, the second and third bikes will be shipped to one of POWERbahn's vendors (e.g. one bike for modification, one bike to remain as a control unit).

- Nautilus will have 120 days from the date the prototype is received at the location specified by Nautilus to execute a license agreement (License Agreement) containing the terms described herein (the "Evaluation Period"). If the 120th day is a holiday or weekend day, the deadline will fall on the next business day.

    o   If Nautilus does not advise POWERbahn of a "to ship" location, the Evaluation Period shall be 130 days from receiving written notice from POWERbahn that the prototype is completed and ready for Nautilus' evaluation.
    o   Nautilus will pay the delivery costs for shipping the prototype to the location of its choosing.

- During the Evaluation Period, Nautilus shall have exclusive negotiating rights for licensing the POWERbahn technology as embodied in the prototype(s). The parties agree that they shall engage in good faith negotiations based upon the basic terms outlined below.

- If Nautilus opts not to license the technology, the following shall occur:

    o   Nautilus, at its expense, shall deliver the prototype(s) to POWERbahn at a location specified by POWERbahn (Continental U.S.).
    o   If the technology is licensed to another party by POWERbahn, POWERbahn will reimburse Nautilus the total cost of the prototype (excluding shipping) within one year of executing any such license agreement.

License Agreement

Nautilus will pay POWERbahn a royalty equaling 5% of net sales of any product in which the "Licensed Technology" is embodied (the "Licensed Products"). Nautilus' obligation to pay such royalties and or minimum annual royalties in accordance with the minimum annual royalty section below, shall remain in full force and effect for a minimum of one (1) year from the date the License Agreement is executed by Nautilus. The Licensed Technology shall include any and all information disclosed in all provisional patent applications, patent applications, divisional patent filings, continuations, along with any improvements to the Licensed Technology, and all improvements thereto, and patents relating to any such improvements. The Licensed Technology is currently comprised of the following United States patents and patent applications: 60/088662; 09/326941; 09/882517; 6,454,679; 10/209,539; 6,676,569; and all continuing and divisional patent applications.

- Net Sales means the gross sales invoiced price at the time Licensed Products are shipped to customers by Nautilus, or any sub-licensee, or companies controlled by either, net of freight, and less any credits for returns, allowances, sales commissions, and trade discounts actually taken, including credit card and financing discounts. For the purpose of calculating royalties payable to POWERbahn, the total amount of the discounts and or credits granted to any customer for any Licensed Product sold shall not exceed a percentage of Nautilus' MSRP, which the parties agree to negotiate in good faith, and as accounted for in the royalty reports (i.e. The Net Sales amount of any Licensed Product(s) shall not be less than the negotiated percentage referenced above subtracted from the MSRP.)

- The minimum annual royalty payments commencing on the date of execution of the License Agreement are to be as follows:

    o   $75,000 Year one;
    o   $100,000 Year two;
    o   $125,000 Year three and thereafter.

    - Minimum Royalties shall be paid in four equal quarterly payments, within 30 days after the end of each calendar quarter, and are to be credited against earned royalties, and shall be accompanied by a report detailing all sales and the royalty calculation.

- Nautilus shall have exclusive rights to the Licensed Technology in the field of exercise equipment and related devices for the life of any related patent(s) as provided for herein. If a court of any competent jurisdiction renders a decision that any of the POWERbahn patent(s) included in the Licensed Technology are invalid or unenforceable, then this license shall automatically terminate. After such termination, the parties agree that Nautilus will only be responsible for paying POWERbahn a "know-how royalty" of 2.5% of Net Sales on the Licensed Technology for 7.5 years from the date of invalidation, and minimum annual royalty payments for one year from the date the decision is rendered, which minimum shall be reduced by 50% for the twelve-month period at issue. As an example, should the patent(s) be held invalid or unenforcable three (3) years from the effective date of the License Agreement, then minimum royalties in that third year will be $62,500 ($125,000 x 50%).

- All costs associated with applications and patent(s) currently filed with the United States Patent Office (USPTO) will be the responsibility of POWERbahn.

    o   Costs associated with filing any continuations and or any new patents related to improvements and or any discoveries shall be the responsibility of Nautilus. Prior

to filing, POWERbahn shall have the right to review all such patent submissions made by Nautilus at POWERbahn's sole expense, and make suggestions to Nautilus and/or Nautilus' counsel. Any changes thereto shall be agreed upon by the parties.

    - Such costs may include, but are not limited to, attorney fees and patent office fees in the jurisdictions of Nautilus' choice, at its sole discretion.
    - If Nautilus elects not to patent any improvement as described immediately above, POWERbahn shall have the exclusive right to patent said improvement or discovery and pay associated costs. However, in the event POWERbahn exercises this right, then the rights to such patent(s) filings shall not be included in the Licensed Technology and subject to the License Agreement with Nautilus.

- POWERbahn will represent and warrant that it owns all right, title, and interest in and to the Licensed Technology as defined above, and/or that is has the authority to enter into the License Agreement.

- In the event of patent infringement or alleged infringement, Nautilus, at its sole discretion, may decide whether to enforce the POWERbahn patent(s). If Nautilus decides to enforce the POWERbahn patent(s), Nautilus agrees to use its best efforts to prosecute infringing parties and enforce said patent(s), at its sole expense. POWERbahn shall receive 5% of any award, settlement and/or other collection received by Nautilus, after Nautilus has first deducted its attorneys fees, costs and expenses incurred in enforcing said patent(s).

    o   If Nautilus decides not to enforce the patent(s), POWERbahn shall have the exclusive right to enforce the patent(s) at its sole expense. In such event, POWERbahn shall retain the total award and the rights thereto.

- Nautilus shall have the right to terminate the License Agreement upon ninety (90) days' written notice to POWERbahn, providing that Nautilus shall pay no less than the royalties due pursuant to the terms of the License Agreement through the quarterly period in which the ninety (90) day termination date falls.

- If Nautilus breaches or defaults on its obligation to make any payments or reports in accordance with the terms of the License Agreement, POWERbahn may terminate the License Agreement after it provides thirty (30) days written notice to Nautilus regarding said breach or default unless, before the end of the 30 day period, Nautilus has cured the default or breach and so notifies POWERbahn in writing, stating the manner of the cure.

- If Nautilus materially breaches or defaults on any other obligation under the License Agreement, POWERbahn may terminate the License Agreement after it provides sixty (60) days written notice to Nautilus regarding said breach or default unless, before the end of the 60 day period, Nautilus has cured the default or breach and so notifies POWERbahn in writing, stating the manner of the cure.

- If POWERbahn terminates the License Agreement for any reason, Nautilus shall have a sell-off period from the date of POWERbahn's termination. During this sell-off period, Nautilus shall not manufacture additional inventory of Licensed Products (except as stated below), but shall have the right to sell its current and existing inventory of Licensed Products, which it shall report to POWERbahn upon termination by POWERbahn. However, Nautilus may utilize any raw materials that is has on hand on the date of POWERbahn's termination to build additional wholegoods inventory that it may sell during the sell-off period, subject to the same reporting requirements. Such termination by POWERbahn shall not waive or discharge Nautilus of its obligations including those to account/report and pay any royalties due POWERbahn.

Understood and agreed to this \_\_13th\_\_ day of May, 2004.

| The Nautilus Health and Fitness Group | POWERbahn, LLC |
|---|---|
| _____ <br> Signature | *Scott B Radow* <br> Signature |
| _____ <br> Printed Name | SCOTT B. RADOW <br> Printed Name |
| _____ <br> Title | MGR <br> Title |
| _____ <br> Date | 5/13/04 <br> Date |

## POWERbahn, LLC

1508 Bay Road, N-235
Miami Beach, FL 33139
Phone 305-495-1524  Fax 305-437-8025

# INVOICE

DATE:
5/14/04

**Bill To:**
Nautilus Health & Fitness Group
1886 Prairie Way
Louisville, CO 80027
Phone 303-545-1480 Fax: 303-939-0245

**Ship To:**
Nautilus Health & Fitness Group
1886 Prairie Way
Louisville, CO 80027
Phone 303-545-1480 Fax. 303-939-0245

| DESCRIPTION | AMOUNT |
|---|---|
| POWERbahn Prototype Development | 41,883.00 |
| Initial Payment | 10,000.00 |
| Remaining Balance (Excluding 10% contingency) | 31,883.00 |
| **TOTAL NOW DUE** | **$ 10,000.00** |

Make all checks payable to **POWERbahn, LLC**

Understood and agreed to this 13th day of May, 2004

The Nautilus Health and Fitness Group

_____
Signature

Kevin Lamar
Printed Name

COO
Title

5-20-04
Date

POWERbann, LLC

_____
Signature

Scott B. Radow
Printed Name

MGR
Title

5/13/04
Date