# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

POWERBAHN, LLC,                  )
                                 )
        Plaintiff,             )
                                 )
v.                               )  Case No. 1:17-CV-02965-AT
                                 )
FOUNDATION FITNESS, LLC,         )
WAHOO FITNESS, LLC, AND          )
PATRICK WARNER,                  )
                                 )
      Defendants.

## DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

## I.    Introduction

Defendants file these Objections to the Special Master's Report and Recommendation Regarding Defendants' Motion for Summary Judgment of Invalidity (Dkt. 307, the "R&R").  The R&R reflects two critical legal errors.  With respect to two different terms in the asserted claims, the Special Master disregarded the Court's Claim Construction Order (Dkt. 154) and applied new, unsupported claim constructions to support his recommendation that genuine issues of material fact exist sufficient to deny Defendant's motion.  This approach is contrary to well-settled Federal Circuit and Supreme Court precedent.  There is no genuine dispute that all asserted claims in this case, as properly construed by the Court, are anticipated by the prior art and therefore invalid.  Defendants request that the Court determine, as a matter of law, that there are no issues of material fact regarding invalidity and enter summary judgment on all of Plaintiff's asserted claims.

## II.    Factual Background and Summary of Argument

On August 27, 2018, the Special Master issued his claim construction Report and Recommendation concerning claims 16, 22, and 24 of the '865 patent and claim 28 of the '476 patent (the "asserted claims").  (Dkt. 136).  On March 12, 2019, the Court entered its Claim Construction Order, adopting in part and overruling in part the Special Master's Report & Recommendation.  (Dkt. 154).

The plain language of the asserted claims does not require simulating a "real-life" activity and the Court did not construe them to include such a limitation.  (Dkt. 154 at 32-33).  The Court also did not construe claim 28 of the '476 patent to require "subtraction" when "determining a difference" between a virtual variable and a measured variable.  (*Id*.).

Defendants' Motion for Summary Judgment of Invalidity (Dkt. 262, the "Motion") asks the Court to find that the asserted claims are invalid in view of U.S. Patent No. 5,256,115 ("Scholder") and U.S. Patent Publication No. 2004/0116253 ("the '253 publication").  The parties only dispute whether these two prior art references anticipate the asserted claims based on their differing ***interpretation*** of two claim elements.[1]  These disputes regarding the scope and meaning of the claims must be decided as a matter of law.  *Markman et al. v. Westview Instruments, Inc. et al.,* 517 U.S. 370 (1996) (holding that the construction of patent claims is exclusively within the province of the court).

---

[1] Plaintiff admits that Scholder anticipates all of the elements of the asserted claims except "an equation of motion of a human subject performing the physical activity being simulated" and "a force input by a human for the human physical activity being simulated".  (*See* Dkt. 307 at 8, 23).  With respect to the '253 publication, Plaintiff admits the '253 publication discloses all the elements of claim 28 of the '476 patent other than "wherein the control system is configured to determine a difference between the first value of the measured variable, and a first value of a virtual variable."  (*Id*. at 19, 22).

In the R&R, the Special Master acknowledged that the Court did not construe the asserted claims to require "real life conditions like riding a bike." (Dkt. 307 at 8-10). However, he found that a fact issue exists whether Scholder anticipates the asserted claims based on Plaintiff's argument that the prosecution history limits the asserted claims to "real-life human activity." (Dkt. 307 at 11-14). In other words, the Special Master applied Plaintiff's new, unsupported limitations to the claims to create a "fact" dispute and then relied on that manufactured dispute to recommend denying Defendants' Motion. The Court should not adopt this construction. It would be legal error to do so.

The Special Master committed a similar error in recommending there is an issue of fact with respect to anticipation of the '476 patent based on Plaintiff's new argument that "determine a difference" in claim 28 of the '476 patent should be limited to "subtraction." (Dkt. 307 at 19-22). The Special Master reached this conclusion even though it is not supported by the plain language of the claim and not required by the Court's claim construction.

## III.   Legal Standards

### A.   Standard of Review

A Special Master's findings of fact and legal conclusions are reviewed *de novo*. FED. R. CIV. P. 53(f)(3-4). The Court "may adopt or affirm, modify, wholly

3

or partly reject or reverse, or resubmit to the master with instructions." FED. R. CIV.

P. 53(f)(1).

### B.   Summary Judgment

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  The movant carries the initial burden to show there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In response, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts" to survive summary judgment.  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### C.   Invalidity

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention."  *Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).  An accused infringer must prove invalidity by clear and convincing evidence.  *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1372 (Fed. Cir. 2005).  The accused infringer's burden does not change simply because a reference was previously considered by the patent examiner, because "[w]hether [or not] a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity."

*Sciele Pharma Inc. v. Lupin Ltd.,* 684 F.3d 1253, 1259-61 (Fed. Cir. 2012).

**D.    Claim Construction**

"It is elementary in patent law that, in determining whether a patent is valid

and, if valid, infringed, the first step is to determine the meaning and scope of each

claim in suit."  *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992).

> It is well settled that the role of a district court in construing claims is
> not to redefine claim recitations or to read limitations into the claims
> to obviate factual questions of infringement and validity but rather to give
> meaning to the limitations actually contained in the claims, informed
> by the written description, the prosecution history if in evidence, and
> any relevant extrinsic evidence.

*American Piledriving Equip., Inv. v. Geoquip, Inc.,* 637 F. 3d 1324, 1331 (Fed. Cir.

2011) *citing Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005).

**IV.   Argument**

**A.    The Recommendation Improperly Imports a "Real-Life Activity"
Limitation into the Claims**

In its opposition to Defendants' summary judgment motion, Plaintiff argued,

for the first time, that the asserted claims are limited to a "real-life activity like riding

a bike."  The undisputed fact is that this phrase does not appear anywhere in the

claims and the addition of it is not supported by the intrinsic record.  It is a narrowing

limitation that Plaintiff seeks to add because otherwise Scholder discloses each and

every element of the asserted claims.

While acknowledging the Court's claim construction does not require a "real-life activity," the Special Master nonetheless relied on this narrower claim construction to conclude that a fact dispute exists as to whether Scholder anticipates the asserted claims.  (Dkt. 307 at 13).  It would be a reversible error for the Court to import these limitations into the claims as the Special Master recommends.  *See Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333, 1339–40 (Fed. Cir. 2013), *amended on reh'g*, 728 F.3d 1332 (Fed. Cir. 2013); *Clearwater Sys. Corp. v. Evapco, Inc.*, 394 F. App'x 699, 706 (Fed. Cir. 2010); *Comark Communications, Inv. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

In its *Markman* order, the Court construed the two phrases at issue here.  The phrase "an equation of motion of a human subject performing the physical activity being simulated" in claim 16 of the '865 patent was construed as "a mathematical representation of movement by a human for a simulated physical activity."  (Dkt. 154 at 32).  The Court construed the phrase "an equation of motion of the type that describes the acceleration of a mass under an influence of a force for the human physical activity being simulated" in claim 28 of the '476 patent as "a mathematical representation of the acceleration of a mass under the influence of a force for a simulated human physical activity."  (*Id.*).  The Court did not construe either of these

claims to include a limitation requiring a "real-life activity like riding a bicycle." (*Id.*).

The "real-life activity" limitation that the R&R found could be imported into the asserted claims is not supported by the plain language or the specification of the '865 and '476 patent. The disclosure in the '865 patent itself does not limit the claim to simulating "real-life activity." The '865 patent Abstract discloses simulating a ***virtual*** environment—*i.e.*, environments that, by their nature, are not "real-life." The '865 patent further discloses that the patented invention trains the user in ways that ***cannot be*** achieved in real life. For example, the '865 patent describes an embodiment with a harness that pulls the user and moves the conveyor at a velocity greater than the maximum velocity a subject could obtain unassisted on level ground. (*See, e.g.*, Dkt. 262-3, '865 patent, 15:3-12). The '865 patent also describes an embodiment that applies an upward force on the subject (*i.e.*, lifts the subject) and allows the subject to reach a velocity greater than the maximum velocity a subject could reach unassisted on level ground. (*See, e.g.*, *id.*, 15:13-23). These embodiments are not simulating a "real-life activity" and thus importing such a limitation into the claims would commit reversible error. *See Soverain Software LLC*, 705 F.3d at 1339–40; *Clearwater Sys. Corp.*, 394 F. App'x at 706; *Comark Communications, Inv.*, 156 F.3d at 1186. By their plain language they simulate

activity that cannot be achieved in "real-life."

The R&R correctly observes that the specification of the '865 patent distinguishes Scholder.  This fact is irrelevant to the dispute over the new limitation added by the R&R.  The specification distinguishes Scholder because Scholder lacked a means to immovably secure a subject,[2] ***not because Scholder did not simulate a real-life activity***:

> For instance, the exercise bike of Scholder et al. (U.S. Pat. No. 5,256,115) <u>allows the pedal resistance to be adjusted, but provides no means of immovably securing the subject while forces are applied to the pedals</u>.  Because the legs are generally much stronger than the arms and hands, the forces which can be exerted by the legs on exercise bikes such as Scholder et al. are limited to some degree by the strength with which the subject can grip the handle bars.

(Dkt. 262-3, '865 patent, 10:6-15). (emphasis added).

Like the '865 patent, the '476 patent pertains to activities other than simulating a real-life activity like riding a real bike, rowing a real boat, or running on a real road.  For example, the '476 patent discloses simulating ***any*** exercise, including exercise done on exercise ***machines***:

> The control arrangement of the present invention can be utilized to control exercise devices such as those discussed above, and also to control rowing machines, weightlifting machines, swimming machines, tennis or baseball practice machines, or any other machine or device used to *simulate an exercise* or other physical activity."

---

[2] The asserted claims do not include this limitation.

(*See* Dkt. 262-4, '476 patent, 5:26-32). (emphasis added).

A claim limitation requiring "real-life human activity" also is not found in the file history of either of the asserted patents, further discrediting Plaintiff's argument that it be included. (Dkt. 307 at 10-11). The file history related to the prior art references considered in depth by the Examiner (Thornton and Carmein) does not discuss or support adding a "real life activity requirement" into the claims. Rather, Applicant distinguished his invention over Thornton and Carmein based on the failure of those references to "recite an apparatus for simulating forces and movement of a human subject during a physical activity" which ***included*** a controller "configured to control the resistance force applied to the moveable member" based on signals from a sensor and a haptic equation. (Dkt. 307 at 10-11). In other words, the Applicant distinguished his invention on the basis of the ***controller*** included in the claims and how that controller controlled the resistance force of the moveable member, but not on the basis of any "real-life simulation" (or lack thereof). Scholder was not substantively used by the Examiner in any of the issued rejections and thus there is no prosecution history with respect to the Scholder

reference that lends support to Plaintiff's arguments that the asserted claims require "simulating a real-life activity."[3]

For the foregoing reasons, the Special Master should have disregarded Plaintiff's new and unsupported arguments, contrary to the Court's claim constructions, that the asserted claims are limited to "simulation of real-life activity." That limitation is not supported by the plain language of the claims or the prosecution history. Thus, the Court should decide as a matter of law that the asserted claims are anticipated by Scholder and enter summary judgment of invalidity.

**B.  The Plaintiff's Imported "Real-Life" Limitations Render the Asserted Claims Indefinite**

The Court also should not adopt the R&R because importing "real-life activity like riding a bike" into the claims would render the asserted claims indefinite. A person of ordinary skill in the art, reading the claims in light of the specification and prosecution history, would be unable to discern what constitutes a "real-life activity" and thus the patents would not give fair notice of what is claimed.

---

[3] For this reason, the Special Master's recommendation that Scholder should carry less weight in the invalidity analysis (Dkt. 307 at 6) is incorrect and should be disregarded.

To determine if a claim is invalid for indefiniteness, the Court examines the claims, specification, and prosecution history "to ascertain if they convey to one of skill in the art with reasonable certainty the scope of the invention claimed." *Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 789 F.3d 1335, 1341 (Fed. Cir. 2015); *see also Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1304 (Fed. Cir. 2017) (rejecting interpretation of a claim term where interpretation leads to an "unworkable claim construction" and would not provide "reasonable certainty" regarding the scope of the asserted claims); *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1373 (Fed. Cir. 2014) (finding "unobtrusive manner" phrase was indefinite where it lacked a "reasonably clear and exclusive definition" and was, in effect, "facially subjective … without an objective boundary"); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1434 (Fed.Cir.1988) (rejecting argument that limitations should be added to claims to preserve the validity of the claims).

Here, the simulated "real-life" activity cannot be determined because it is unknown what degree of "realness" is required.  For example, Plaintiff contends that "riding a bike" is sufficiently "real."  "Riding a bike" itself, however, is ambiguous. It can include riding a road bike outdoors or riding an exercise bike indoors, both of which are done in "real life."  Moreover, this construction would not allow a person of ordinary skill to determine how much "real life activity" is required.  Must the

simulated activity include all elements of the "real life" exercise or can it simply be components of it?  Would a recumbent exercise bike, set up differently from the way "real-life" bikes are configured in that it does not involve putting any weight on one's arms, sufficiently simulate a "real-life activity"?  Would sitting on an electronic bike using power assist on the maximum setting to avoid exertion sufficiently be "real-life riding a bike"?  Or is "real life" based on a subjective, user-based assessment of "realness"?

Even Plaintiff's expert could not describe how to measure this limitation.

Q. Okay. How do you distinguish – you know, the quote you included in your opinion talks about some exercise devices mimic a corresponding physical activity to some degree, and some vary the force required in [an] effort in order to simulate hills or the like encountered by the user.

But then it goes on to say, *but these known control schemes and methods do not provide force feedback that realistically simulate forces*.

How can you tell what is enough?

Mr. Alexander: Object to form.

Q. *If some of them do it but it is just not enough, what is enough*, who decides, how do you know?

A. *I don't have an answer for that question*. This is just providing methods to make it better, but what is enough, I don't know how –

(Dkt. 267-08, 3/11/20 Lynch Dep., 178:5-23). (emphasis added).

12

Q. But anyway, my concern here is that you are trying to make a qualitative judgment based on what is more realistic than not, and there is no objective way to measure that, and I am asking you if there is some objective way that you can measure it.

Mr. Alexander: Object to form.

A. So, this is not what I have been asked to provide an analysis of, but I have done plenty of experiments with humans interacting with machines, and *one way to do it is to ask them how did it feel?*

(*Id*., 181:12-23). (emphasis added).

The facts are that there are no objective standards by which to determine how "real" the "real-life activity" has to be or what even constitutes an "activity" that satisfies the limitation the R&R recommends the Court import into the claims. What feels or seems like a "real life activity" to one person may not seem or feel so "real" to another.

Importing the "real-life activity" limitation into the asserted claims creates uncertainty about the meaning of the claims and violates the fundamental patent law principle that proper notice be given to the public so that it knows what violates a patent and what does not. The claims with the new limitation are necessarily indefinite and invalid under the *Nautilus* standard, *Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120, 2124 (2014), and for that additional reason the R&R should not be adopted as it relates to this claim limitation and Defendants' Motion, which is based on a proper interpretation of the claims, should be granted.

13

**C.    The Recommendation Concerning the '253 Publication Improperly Imports a "Subtraction" Limitation**

The Special Master also recommended denying Defendants' summary judgment motion on the grounds that a fact issue exists concerning whether the '253 publication anticipates claim 28 of the '476 patent.  In so recommending, the Special Master specifically relied on Plaintiff's argument that the phrase "determining a difference" in claim 28 of the '476 patent could require "subtraction."  (Dkt. 307 at 19-22).  That was an error.  The argument that "determining a difference" requires subtraction—like Plaintiff's "real-life activity" construction—ignores the plain language of the claims, is not supported by the '476 patent specification, and is inconsistent with the Court's claim construction.  When viewed in light of the properly-construed claim, the '253 publication anticipates claim 28 of the '476 patent as a matter of law.

As the Court noted in its claim construction order, the plain and ordinary meaning of a claim should be applied absent some disclaimer or disavowal of claim scope.  (Dkt. 154 at 7, 23, 25-26).  The relevant language of claim 28 requires:

> the first value is measured before the second value, and wherein the control system is ***configured to determine a difference between the first value of the measured variable, and a first value of a virtual variable*** as a control input to control the resistance force on the user input member.

(Dkt. 154 at 32 *citing* '476 patent at claim 28). (emphasis added).

14

Thus, the plain language of the claim—the primary source this Court should consult in determining the meaning of the claim—is clear. *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1317 (Fed. Cir. 2005). The claim only requires "determining a difference" without specifying ***how*** the difference is determined. Because the claim is not limited, "determining a difference" necessarily includes comparisons, averaging, predictive estimation, subtraction, and other means. If the patentee intended to include a "subtraction" limitation in the claims, he could have added "by subtraction" to the claim. He did not, and so the Court should not add a limitation the patent does not include.

Second, nowhere in the specification of the '476 patent is "determining a difference" expressly or implicitly defined as requiring subtraction. Indeed, the specification ***teaches away*** from limiting the patent in that manner.

The scope of a claim should not be narrowed to a single embodiment "unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." (Dkt. 154 at 5 *citing Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906 (Fed. Cir. 2004)). Here, the term "subtraction" is ***never even used*** in the body of the '476 patent, much less is "determine a difference" defined to include ***only*** subtraction. The single embodiment Plaintiff asks the Court to read into the claims does not arise to the level

of "manifest exclusion," but rather is an exemplary embodiment.  (*See* Dkt. 307 at

21 *citing* '476 patent at 18:67-19:3; *see also* '476 patent at 23:37 ("In the foregoing

description, it will be readily appreciated by those skilled in the art that modifications

may be made to the invention without departing from the concepts disclosed herein.

Such modifications are to be considered as included in the following claims, unless

these claims by their language expressly state otherwise.")).

The specification also teaches that "determining a difference" ***cannot*** be

limited to "subtraction" because the specification discloses ways of "determining a

difference" that are not subtraction.  For example, with respect to Fig. 1A, the '476

patent indicates that "the difference between the virtual velocity 70 and the measured

velocity 71 occurs at diagram element 88."  Diagram element 88 is a typical symbol

for a summation, and it is identical in appearance to diagram element 22 (Fig. 2A)

which is referred to as "a summation 22."  (*See* Dkt. 262-4, '476 patent, 16:56-

17:10).  Put differently, the '476 patent describes determining a difference using

***addition***—not subtraction.  Construing "determining a difference" to require

***subtraction*** would eliminate this and other disclosed embodiments[4] where a

summation, not subtraction, is used to determine the difference.

------

4 *See also* Dkt. 262-4, '476 patent, 11:27-67.

Adopting the Special Master's Recommendation would also require the Court to narrow the meaning of the claim based on the *ipse dixit* of Plaintiff's expert. (*See* Dkt. 280-1, Lynch Rebuttal Report at ¶ 140 ("Claim 28 involves subtraction to determine a difference, while the cited passage of the '253 publication merely discloses a greater-than/less-than comparison.")). Allowing an expert to re-write the claim to include a "subtraction" limitation would be legal error. The testimony of an expert **cannot** contravene the plain language of the claims. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent."); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995) ("Because the expert testimony is entitled to no weight, it cannot create a genuine issue of material fact precluding summary judgment. Claim interpretation, as a question of pure law, is amenable to summary judgment and disagreement over the meaning of a term within a claim does not necessarily create a genuine issue of material fact"); *Bell & Howell Document Mgmt. Prod. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) ("Patents should be interpreted on

the basis of their intrinsic record, not on the testimony of such after-the-fact "experts" that played no part in the creation and prosecution of the patent.").

Under a proper understanding of "determining a difference" that does not improperly import a "subtraction" limitation into the claim, the '253 publication discloses all of the limitations of claim 28 of the '476 patent. Thus, this Court should not adopt the Special Master's recommendation and grant summary judgment of invalidity of claim 28 of the '476 patent for Defendants.

### D. The Recommendation Misinterpreted How the PTO Considered Scholder and the '253 Publication

Finally, the Special Master's recommendation erroneously and improperly concluded that Scholder and the '253 publication were previously considered by the PTO on the claims presented in this action and indicates that, as a result, those references should be given less weight.

Prior art identified during prosecution of a patent is often used to invalidate a patent. *See, e.g., PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1366-67 (Fed. Cir. 2007) (reversing the denial of JMOL where examiner had considered prior art but incorrectly determined the patent was nonobvious based on the prior art); *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958-60; 962-66 (Fed. Cir. 2014) (reversing district court and finding patent was obvious in light of prior art cited in the application and raised during the prosecution history); *Schering Corp. v.*

*Geneva Pharm.*, 339 F.3d 1373, 1382 (Fed. Cir. 2003) (finding that patent was invalid as anticipated due to prior art referenced in the patent application). That is the case here. None of the prior art references cited by Defendants were used by the Examiner in any of the issued rejections. (*See* Exhibit A, Excerpts from File History of the '476 patent; Exhibit B, Excerpts from File History of '865 patent). In other words, there is no prosecution history that relates to whether the PTO distinguished the asserted patents from prior art at issue here on the basis of Plaintiff's proposed "real-life activity" or "subtraction" limitations--the sole disputes remaining on the question of invalidity.

Therefore, the fact that the prior art references relied upon in Defendants' Motion were before the Examiner is not dispositive of Defendants' invalidity arguments and has little, if any, bearing on the validity of the asserted claims. The Court should ignore the Special Master's recommendation that less weight be given to Scholder and the '253 publication.

## V.    Conclusion

For all the foregoing reasons and those in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment of Invalidity (Dkt. 262-1) and Their Reply in Support of Their Motion for Summary Judgment of Invalidity (Dkt. 291), Defendants respectfully request the Court enter summary judgment of

invalidity in their favor on all claims asserted against them in this case, that this matter be dismissed in its entirety, and for such other and further relief as the Court deems just and proper.

Respectfully submitted this 9th day of November 2020.

/s/ Keith J. Grady
Keith J. Grady
Admitted *pro hac vice*
Keith.Grady@tuckerellis.com

Tucker Ellis LLP
100 S. Fourth St., Suite 600
St. Louis, MO 63102
Telephone: 314.571.4979
Facsimile: 314.256.2549

John P. Snow
Admitted *pro hac vice*
jsnow@polsinelli.com

Polsinelli PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
Telephone: 312.873.1900
Facsimile: 312.873.1910

*Attorneys for Defendants*

Holmes J. Hawkins
Georgia Bar No. 338681
hhawkins@kslaw.com
King & Spalding, LLP
1180 Peachtree St. NE
Atlanta, GA 30309

*Attorneys for Defendant Wahoo Fitness, LLC*

## <u>L.R. 7.1(D) CERTIFICATE OF FONT COMPLIANCE</u>

I hereby certify that the foregoing has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.1(C), the Northern District of Georgia, specifically Times New Roman 14 point.

<u>/s/ *Keith J. Grady*</u>