## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

POWERBAHN, LLC,

       Plaintiff,

    v.

FOUNDATION FITNESS LLC, WAHOO
FITNESS, LLC, and PATRICK WARNER.

       Defendants.

Case No. 1:17-cv-02965-AT

**<u>JURY TRIAL DEMANDED</u>**

## POWERBAHN, LLC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING DEFENDANTS' <u>MOTION FOR SUMMARY JUDGMENT OF INVALIDITY</u>

# Table of Contents

I.     The Special Master Did Not Err in Describing Defendants' Burden in Proving Invalidity Based on References Considered by the Examiner...................1

II.    The Special Master Correctly Recommended that Defendants be Denied Summary Judgment of Invalidity Regarding '865 Patent Claim 16 ........................2

    A.  Defendants Fail to Object to the Report's Conclusion that a Fact Issue Exists as To Whether Scholder Discloses a Controller that Controls Resistance Force Based on a Haptic Equation.................................................................................2

    B.  The Report Correctly Found that a Factual Dispute Exists as to Whether Scholder Utilizes an Equation of Motion of a Human Subject Performing the Physical Activity Being Simulated........................................................................4

    C.  Defendants' New Arguments are Untimely and Without Merit ....................9

III.   Defendants' Objections Fail to Establish that Scholder Anticipates Claim 28 of the '476 Patent ....................................................................................................15

IV.    Defendants Contradict Even Their Own Expert in Asking the Court to Ignore the Plain Meaning of "Determining a Difference" .................................................20

# Table of Authorities

**Cases**

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
   725 F.2d 1350 (Fed. Cir. 1984)……………………………………………………2

*Biosig Instruments v. Nautilus*,
   783 F.3d 1374 (Fed. Cir. 2015)……………………………………………………...13

*California Medical Prods. v. Tecnol Medical Prods.*,
   921 F.Supp. 1219 (D. Del. 1995)……………………………………………………...9

*Convolve v. Compaq Computer*,
   2004 U.S. Dist. LEXIS 17502 (S.D.N.Y. Sept. 1, 2004)………………………..9

*DDR Holdings v. Hotels.com*,
   773 F.3d 1245 (Fed. Cir. 2014)………...…………………………………………15

*Net2Phone v. eBay*,
   No. 06-2469, 2008 U.S. Dist. LEXIS 50451 (D.N.J. Jun. 26, 2008)……………9

*Spansion v. ITC*,
   629 F.3d 1331 (Fed. Cir. 2010)……………………………………………...15

## I.     The Special Master Did Not Err in Describing Defendants' Burden in Proving Invalidity Based on References Considered by the Examiner

Each of the two prior-art references Defendants rely on in their Objections was considered by the Examiner during prosecution. U.S. Patent No. 5,256,115 ("Scholder"), the only reference Defendants rely on regarding the '865 patent, was both discussed in the '865 patent and cited by POWERbahn in an Information Disclosure Statement ("IDS"). D279, 1-2. POWERbahn also disclosed Scholder in an IDS submitted during prosecution of the '476 patent. *Id.*, 25. And POWERbahn disclosed the other reference Defendants rely on for the '476 patent (POWERbahn's own '253 publication) not once, but four times. D279, 19-20.

Defendants wrongly accuse the Special Master of "erroneously and improperly conclud[ing] that Scholder and the '253 publication were previously considered by the PTO on the claims presented in this action and indicates that, as a result, those references should be given less weight." The Special Master did not say it is impossible for a patent claim to be invalidated by a reference considered during prosecution. Instead, he quoted binding Federal Circuit precedent regarding the challenger's burden in relying on art considered during prosecution:

> [W]hen no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in

1

> interpreting the references and to be familiar from their work with the
> level of skill in the art and whose duty it is to issue only valid patents.

D307 at 6 (quoting *Am. Hoist & Derrick v. Sowa & Sons*, 725 F.2d 1350, 1359

(Fed. Cir. 1984)). Defendants do not dispute that this is the law.

Instead, Defendants assert that this principle does not apply because the

Examiner did not specifically reject the asserted claims over these references. But

POWERbahn placed them front-and-center before the Examiner. D279, 1, 19, 25.

The most natural conclusion in keeping with the presumption that examiners do

their job is that the Examiners here recognized that these references do not

anticipate POWERbahn's patents for the reasons POWERbahn has identified.

If Defendants felt the Examiners made a mistake in allowing POWERbahn's

patents over these references, they could have asked the Patent Office to correct

this mistake by petitioning for *inter partes* review. Having spurned that

opportunity, they fall short in asking the Court to second-guess the Patent Office.

## II.     The Special Master Correctly Recommended that Defendants be Denied Summary Judgment of Invalidity Regarding '865 Patent Claim 16

### A.     Defendants Fail to Object to the Report's Conclusion that a Fact Issue Exists as To Whether Scholder Discloses a Controller that Controls Resistance Force Based on a Haptic Equation

As the Special Master described, POWERbahn argued that Scholder fails to

disclose the following element of claim 16 of the '865 patent: "a controller

configured to control the resistance force applied to the movable member by the

force-generating device based, at least in part, on . . . a haptic equation

incorporating an equation of motion of a human subject performing the physical

activity being simulated." Dkt. 262-3, '865 patent at 62:1-7. Defendants incorrectly

assert that POWERbahn's argument related only to "the physical activity being

simulated" language. POWERbahn also argued that Scholder does not disclose

configuring a controller of an exercise apparatus to control resistance utilizing, in

part, a haptic equation incorporating the recited equation of motion. D279,

POWERbahn's Opposition at 11-15; D298, POWERbahn's Surreply at 8-9.

      The Special Master recounted POWERbahn's argument on this point in

detail. D307 at 11-12. The Special Master stated, "According to POWERbahn,

Scholder does not configure an exercise bike's controller to utilize a haptic

equation as construed by the Court, because there is no feedback information of

forces applied by a human subject on the pedals, as it is assumed to be zero." D307

at 11. The Special Master then quoted from a portion of POWERbahn's argument

on this point: "'Scholder teaches that rather than using the force input by the user

in the bike's control system, the control system should instead use only the torque

applied by the motor (not the user)' which is contrary to the Court's claim

construction." *Id.* at 11 (quoting D279, POWERbahn's Opposition at 13). He then

summarized the remainder of POWERbahn's argument. D307 at 11-12.

As the Special Master determined, "the 'battle of the experts' concerning whether the Scholder Patent anticipates Claim 16 of the '865 Patent has resulted in conflicting evidence which presents a sufficient disagreement that renders summary judgment improper." D307 at 13. Defendants fail to object to the Special Master's conclusion on this element of claim 16. Therefore, the Court should adopt the Special Master's recommendation to deny summary judgment on this claim.

### B. The Report Correctly Found that a Factual Dispute Exists as to Whether Scholder Utilizes an Equation of Motion of a Human Subject Performing the Physical Activity Being Simulated

Claim 16 is directed to "[a]n apparatus for simulating forces and movement of a human subject during a physical activity." It goes on to recite "a controller configured to control the resistance force" in part based on "a haptic equation incorporating <u>an equation of motion of a human subject performing the physical activity being simulated</u>." Dkt. 262-3, '865 patent at 61:25-26, 62:1-7. The Special Master properly concluded that a fact issue exists as to whether Scholder discloses a controller configured to control resistance using an equation of motion of a human subject performing the physical activity being simulated. D307, 13-15.

Contrary to Defendants' repeated accusations, the Special Master did not apply "new, unsupported limitations to the claims to create a 'fact' dispute and

then rel[y] on that manufactured dispute to recommend denying Defendants'
Motion." D308, 3. Defendants incorrectly assume that under the Court's claim-
construction order, any conventional exercise apparatus would satisfy this claim
phrase. The claim-construction order did not address this question. In fact, the
Court's order recognized that POWERbahn relied on a similar claim phrase in a
related application to distinguish conventional exercise equipment. D154, 12.

Scholder is not concerned with simulating an activity like a person riding a
bicycle. Rather, Scholder discloses that its purpose involves simulating something
entirely different—it "electronically simulates the inertia formally [*sic*, formerly]
provided by a large flywheel." Dkt. 262-5, 4:30-32. Flywheels are heavy chunks of
metal that add significantly to the cost of an exercise bike. *Id.*, 1:46-55. Therefore,
an exercise bike without a flywheel would cost significantly less than a comparable
exercise bike with a flywheel. D280-1, ¶35. Scholder was not concerned with
simulating the experience of riding a bicycle on a road—it was not concerned with
the forces acting on a person riding a bike, such as road resistance or wind
resistance. Rather, Scholder simply wanted to model a flywheel-less exercise bike
to operate like an exercise bike *with* a flywheel: "This invention provides a
stationary bicycle with an electronic flywheel which performs as if a large
conventional flywheel were part of the equipment." D262-5, 1:59-62.

In contrast to Scholder, the '865 patent discloses improved exercise equipment for training athletes in their particular sport. Dkt. 262-3, 1:52-59. The '865 patent acknowledges the existence of earlier exercise devices such as exercise bicycles, rowing machines, stair simulators, elliptical trainers, and the like. *Id.*, 1:67-2:2. However, the '865 patent asserts that such prior-art exercise devices were generally not well-suited for "sport-specific training," which the '865 patent calls "the most effective means of improving athletic performance in a particular sport." *Id.*, 1:59-66. The '865 patent sought to address this problem: "The apparatus and method of the present invention provide functionalities which allow for concentrated training in the wide range of exertion regimes, thereby making it useful for sport-specific training of an athlete." *Id.*, 2:48-51. To that end, the '865 patent's exemplary equations account for forces mimicking those a human subject would experience in the simulated physical activity. *Id.*, 38:18-20, 38:37-53 (referencing forces due to simulating wind, slope, and friction).

This backdrop explains what claim 16 means in reciting a controller configured to control resistance utilizing "an equation of motion of a human subject performing the physical activity being simulated." It is talking about, for example, an exercise bike that utilizes an equation of motion that simulates forces a person riding a bike on a road would feel, a rowing machine that simulates forces

6

a person rowing a boat would feel, and the like.

The prosecution history confirms that POWERbahn added this claim phrase to claim 16 to distinguish its invention from prior-art references similar to Scholder. D280-1, Lynch Rebuttal ¶¶57-58. During prosecution, the Examiner rejected application claim 21 (renumbered as claim 16 in the issued patent) as being obvious over Thornton in view of Carmein. Thornton discloses techniques for making a treadmill located in a weightless environment function similarly to a treadmill on earth. D279-9, Thornton at 2:30-32. Carmein is directed to a treadmill allowing a user to assume various postures, including walking, running, crawling on hands and knees, or belly crawling. D279-10, Carmein at 1:52-59.

At this point in the prosecution, claim 16 (then numbered as claim 21) already recited a haptic equation. POWERbahn responded to the rejection by amending the claim to additionally recite that the "haptic equation incorporat[es] an equation of motion of a human subject performing the physical activity being simulated." D279-11, 6. POWERbahn specifically relied on this new claim language in distinguishing the prior-art treadmills, stating, for example, that "a simple PID controller as disclosed by Carmein '854 does not utilize a haptic equation incorporating an equation of motion of a human subject performing the physical activity being simulated as recited in amended claim 21." *Id.*, 9-10. The

Examiner allowed the claims in response to this amendment. D279-24.

Thus, the prosecution history confirms that the claim phrase "equation of motion of a human subject performing the physical activity being simulated" was specifically added to distinguish exercise devices that simply allow a user to engage in motions like running, pedaling, or the like. In this sense, Scholder is generally similar to Thornton, which wanted to make a treadmill in space function like a treadmill on earth. Scholder does not disclose an equation for simulating the forces a person riding a bicycle on a road or trail experiences; Scholder's only equation of motion merely models a conventional exercise bike: "The update of the 'speed reference' command is based on the same equation (as recited above) which determines speed for a conventional flywheel." Dkt. 262-5, 8:62-66.

Defendants' own expert admits that "[t]he 'speed reference' equation 'electronically simulates the inertia formerly provided by a large flywheel,' of an exercise bicycle." D279-12, ¶102; D280-2, 151:9-13. In short, Defendants' expert admits that Scholder was concerned with making a flywheel-less exercise bike operate like an ordinary exercise bike, which is different than simulating a human riding a bicycle on a road or other terrain. Scholder discloses the sort of conventional operation POWERbahn distinguished, supporting the Special Master's finding that fact issues render summary judgment improper. *California*

*Medical Prods. v. Tecnol Medical Prods.*, 921 F.Supp. 1219, 1249 (D. Del. 1995)

(finding no anticipation because patentee distinguished similar art in prosecution).

### C.    Defendants' New Arguments are Untimely and Without Merit

Defendants present three new arguments regarding this claim element: (1)

one argument based in the '865 patent's prosecution history (D308 at 9); (2) one

argument based in the specification (*id.* at 7); and (3) one argument that the claim

phrase is indefinite unless Defendants' interpretation is adopted (*id.* at 10-13).

Because these arguments were not presented in Defendants' summary-

judgment briefing, they should not be considered now: "Courts generally exclud[e]

evidence of new arguments on objections … [because] [s]ystematic efficiencies

would be frustrated and the [Special Master's] role reduced to a mere dress

rehearser." *Net2Phone v. eBay*, 2008 U.S. Dist. LEXIS 50451, *12 (D.N.J. Jun. 26,

2008) (quot. omitted) (adjustments in original)); *Convolve v. Compaq Computer*,

2004 U.S. Dist. LEXIS 17502, *3 (S.D.N.Y. Sept. 1, 2004) ("The new arguments

now advanced by Convolve come too late because they could have been raised to

the Special Master but were not."). These new arguments also fail on the merits.

As discussed above, the '865 patent's prosecution history shows that

POWERbahn added the phrase "incorporating an equation of motion of a human

subject performing the physical activity being simulated" to the "haptic equation"

language (which was already in the claim) to distinguish prior art cited by the

Examiner. Defendants now argue for the first time that POWERbahn actually

distinguished these references "based on the failure of those references to 'recite an

apparatus for simulating forces and movement of a human subject during a

physical activity' which ***included*** a controller 'configured to control the resistance

force applied to the moveable member' based on signals from a sensor and a haptic

equation." D308 at 9. But as shown in the excerpt below, the amended claim

*already* recited a controller that controlled resistance based on a signal from the

sensor and a haptic equation.[1] D279-11, 6. Thus, POWERbahn would not have

needed to amend the claim to distinguish the cited art on that basis.

> a controller configured to control the ~~resistance~~ force applied to the movable member
> by the force-generating device based, at least in part, on [[the]] a signal provided by the sensor
> and a haptic equation ~~relating the force and velocity~~ incorporating an equation of motion of a
> human subject performing the physical activity being simulated.

Instead, POWERbahn distinguished the cited art by pointing specifically to

the claim phrase including the newly added language requiring "an equation of

motion of a human subject performing the physical activity being simulated":

> Independent claim 21 has been amended to recite an apparatus for
> simulating forces and movement of a human subject during a physical
> activity. . . . The apparatus further includes a controller configured to
> control the resistance force … based, at least in part, on a signal

---

[1] While POWERbahn amended the claim to clarify that the signal was provided by
the sensor, the claim already required that the sensor provide a signal and that the
controller utilized this signal in controlling resistance. D279-11, 5-6.

> provided by the sensor <u>and a haptic equation incorporating an equation of motion of a human subject performing the physical activity being simulated.</u> … Clearly, a simple PID controller as disclosed by Carmein '854 does not utilize a haptic equation incorporating an equation of motion of a human subject performing the physical activity being simulated as recited in amended claim 21.

D279-11, 9-10.

Defendants also present a new argument based on the '865 patent's specification. D308, 7 (citing D262-3, 15:3-23). They argue that Scholder *must* disclose an equation of motion of a human subject performing a simulated physical activity because the '865 patent discloses a pair of "overspeed" embodiments that allow a user to reach higher velocities than he could unassisted in an effort to push his limits and increase his abilities. D262-3, 6:52-65. Defendants' argument, unsupported by their own experts, is a red herring. As the '865 patent teaches, these embodiments are akin to natural scenarios like running downhill or with a tailwind. *Id.* at 7:36-48. Scholder does not disclose such overspeed embodiments, so these embodiments do not bolster Defendants' anticipation argument.

As POWERbahn's expert opined, Scholder is not trying to simulate a human physical activity in the context of the '865 patent. D280-1, ¶54. In a flywheel-less training device like Scholder's, a controller implementing an equation of motion for a simulated physical activity would need to account for at least two things: (1) simulating the kinetic energy storage device; and (2) controlling the entire system

11

to implement a haptic equation that simulates a human physical activity. *Id.*, ¶55. Scholder's speed-reference equation makes no such effort to simulate the physical activity (in Scholder's case, riding a bike). As Defendants' expert agreed, Scholder does not take into account simulated wind speed or simulated road friction. D280-2, 151:14-19. He also admitted Scholder provides no suggestion that it is trying to imitate the feel of riding a bicycle on a road. *Id.*, 151:20-23. Therefore, nothing in Scholder's speed reference equation incorporates a mathematical representation of movement by a human for a simulated physical activity. D280-1, ¶¶54, 56.

In contrast, the exemplary equations in the '865 patent *do* account for forces mimicking those a user would experience in the simulated physical activity. Dkt. 262-3, 38:18-20, 38:37-53 (referencing forces due to simulating wind, slope, and friction). This is also true of the '865 patent's overspeed embodiments, which (unlike Scholder) account for such forces acting on the human. *Id.*, 34:9-18, 35:49 (accounting for a runner's drag coefficient and air resistance in overspeed embodiments). That the overspeed embodiments also simulate a tailwind or downhill effect presents no inconsistency with the Special Master's conclusion.

Finally, Defendants argue that if it is determined that Scholder does not teach this claim element, then the claim element must be indefinite. This argument appears nowhere in their summary-judgment brief. Nor did Defendants' technical

experts raise it in their validity reports, thus depriving POWERbahn's expert of the chance to provide a rebuttal opinion. Since an indefinite claim is invalid, Defendants effectively present a new motion for summary judgment (based solely on attorney argument) that should be rejected as untimely. It is also without merit.

First, Defendants again misrepresent the basis for the Special Master's Recommendation. He did not adopt a new construction of this claim phrase. Thus, Defendants' entire indefiniteness argument is built on the false premise that the Special Master changed the Court's claim construction. He did not.

Second, Defendants mistakenly argue that the Special Master's recommendation results in the claim involving a term of degree. As an initial matter, terms of degree do not necessarily render a claim term indefinite. *Biosig Instruments v. Nautilus*, 783 F.3d 1374, 1381 (Fed. Cir. 2015) (finding phrase "spaced relationship" sufficiently definite). More importantly, this claim phrase does *not* involve a term of degree. POWERbahn did not argue—and the Special Master did not conclude—that Scholder does simulate a physical activity like riding a bike but fails to do so well enough to satisfy the claim. Rather, POWERbahn argued that Scholder does *not* simulate a physical activity within the meaning of the '865 patent. Scholder was instead concerned with making a flywheel-less exercise bike operate like an exercise bike with a flywheel to save

money. Scholder did not disclose accounting for wind speed or road friction, as discussed above.

Thus, POWERbahn's argument—and the fact issue identified by the Special Master—was based on a yes/no question, not a question of degree. This is the same distinction POWERbahn raised during prosecution of the '865 patent in explaining how its claimed invention was different than the cited art. POWERbahn argued, for example, that Carmein did not simulate a human physical activity as claimed. In contrast, POWERbahn did *not* argue that Carmein simulated a human physical activity but failed to do so well enough.

As discussed below, and as POWERbahn's expert testified, the '476 patent also provides context for understanding the similar limitation of claim 28. D262-4, 1:27-37, 5:13-17, 9:40-42, 18:14-64; D267-8, 179:1-10. POWERbahn also relied on this limitation during prosecution to distinguish art disclosing an equation relating to a "stationary exercise bicycle" instead of "an actual human/bicycle." D279-19, 12-13. POWERbahn did not argue that the art failed to simulate a physical activity well enough; it argued that it simply did not disclose this element. Neither the Examiner of the '865 nor the '476 patent raised indefiniteness when POWERbahn distinguished art based on this claim phrase.

The Federal Circuit has held that "[w]hether a patent clearly differentiates

14

itself from specific prior art is an important consideration in the definiteness inquiry." *Spansion v. ITC*, 629 F.3d 1331, 1346 (Fed. Cir. 2010) (quot. omitted). Given the context provided by the '865 and '476 patents, as well as POWERbahn's reliance on these phrases in distinguishing prior art, Defendants' attorney argument fails.[2] *DDR Holdings v. Hotels.com*, 773 F.3d 1245, 1260-61 (Fed. Cir. 2014) (finding "look and feel" sufficiently definite based on specification's context).

### III. Defendants' Objections Fail to Establish that Scholder Anticipates Claim 28 of the '476 Patent

Claim 28 of the '476 patent recites simulating a human physical activity in both the preamble and the body of the claim. POWERbahn's expert opined that Defendants do not establish that Scholder discloses an exercise device for simulating a human physical activity as claimed in the '476 patent. D280-1, ¶64. The Special Master determined that the parties' dispute involves a fact issue rendering summary judgment inappropriate. D307, 23-25. Defendants fail to establish that the Special Master's recommendation was erroneous.

---

[2] Defendants' incomplete citations to the deposition of POWERbahn's expert fail to prove their point. First, POWERbahn's expert submitted a *rebuttal* report. Defendants' experts did not assert that this claim element was indefinite so POWERbahn's expert had no need to opine on its definiteness. Second, Defendants' deposition questioning focused on a sentence in the specification of the '476 patent, not the claim language. Third, POWERbahn's expert *did* identify objective grounds for evaluating this claim element. D267-8 at 179:1-10.

As discussed above, Scholder discloses equations of motion modeling a conventional exercise bike. D262-5, 4:30-32, 1:45-54, 8:62-66. Scholder is not concerned with simulating a human riding a bicycle on a road or other terrain. D280-1, ¶65. Defendants' expert admitted that Scholder does not factor in things like simulated wind speed, road friction, or otherwise indicate that it is trying to imitate the feel of riding a bicycle outdoors. D280-2, 151:9-23.

The '476 patent, in contrast, indicates that when claim 28 refers to simulating a human physical activity, it is talking about, for example, imitating the feel of a person riding a bike. The '476 patent teaches that prior-art exercise devices might provide basic functionality like varying the resistance to a provide a "hill setting," but that this was insufficient to simulate an actual physical activity:

> Various types of exercise devices such as stationary bikes, treadmills, stair climbers, rowing machines, and the like, have been developed. Such exercise devices mimic a corresponding physical activity to some degree. . . . Also, some exercise devices vary the force required in an effort to simulate hills or the like encountered by a user. However, known control schemes/methods do not provide force feedback that realistically simulates the forces encountered when performing the actual physical activity to be simulated.

D262-4, 1:18-35; D280-1, ¶65. Thus, the '476 patent explains, "known stationary exercise bikes do not feel like a real bicycle to a user." *Id.*, 5:4-6.

The '476 patent explained that this is because "the actual conditions include a complex interaction between the rider's applied force, the bike and rider's

weight, the slope of the road, the road smoothness, wind resistance, the bike speed, and other factors." D262-4, 5:13-17. The '476 patent teaches incorporating these same factors in simulating a physical activity like riding a bicycle. *Id.*, 9:40-42, 18:14-64. Accordingly, the '476 patent states, "Because the control system and apparatus of the present invention provides for the various dynamic and other factors associated with riding a real bike, the force experienced by a rider is substantially the same as those experienced by a rider on a real bike." *Id.*, 16:10-14.

Thus, the '476 patent distinguishes its claimed invention for simulating physical activity like riding a bicycle from prior-art exercise devices that merely, for example, "vary the force required in an effort to simulate hills or the like encountered by a user." *Id.*, 1:30-32. That basic functionality distinguished by the '476 patent—which Defendants' expert acknowledged has long been a common feature of exercise equipment—is the type of basic and long-known functionality Scholder discloses. Dkt. 262-5, 4:25-29; D280-3, 58:18-59:21; D280-1, ¶66.

The prosecution history also supports POWERbahn. During prosecution, POWERbahn characterized the claim phrase "equation of motion . . . for the human physical activity being simulated" as referring to "an actual human/bicycle." D279-19, 12-13. POWERbahn argued that the cited art utilized an

equation relating to a "stationary bicycle" instead of "an actual human/bicycle" and therefore did not disclose the recited "equation of motion . . . for the human physical activity being simulated." *Id.*; *see also* D279-20, 10 (asserting the cited art, at most, "would require use of an equation of motion for the stationary bike itself without a rider, not an equation of motion 'for the human physical activity being simulated'"). In contrast, when addressing another cited reference ("Sargeant") that took into account air drag, rolling resistance, and slope, POWERbahn did not dispute that it disclosed an equation of motion for simulating a physical activity; it distinguished Sargeant on other grounds. D279-21, 24.

The Special Master concluded, "It would appear that the '476 Patent specification lends support to POWERbahn's position that 'known stationary exercise bikes' like Scholder are not trying to simulate a human activity like riding a real bike." D307, 24. In their Objections, Defendants respond to the Special Master by arguing for the first time that "the '476 patent discloses simulating *any* exercise, including exercise done on exercise *machines*."[3] D308, 8. This new argument mischaracterizes the '476 patent. The quoted passage states that "[t]he control arrangement of the present invention can be utilized to *control exercise*

---

[3] Defendants' Reply in support of their summary-judgment motion did not address any of POWERbahn's arguments that Scholder does not anticipate claim 28.

*devices* such as those discussed above, and also to control rowing machines, weightlifting machines, swimming machines, tennis or baseball practice machines, or any other machine or device used to *simulate an exercise* or other physical activity." D262-4, '476 patent, 5:26-32. The plain language of this passage says that the invention can be used to control exercise devices to "simulate an exercise," such as rowing, swimming, or the like. This is consistent with POWERbahn's position. This passage does *not* say that the invention mimics the operation of conventional exercise devices, as Scholder sought to accomplish.

In addition to the element of claim 28 discussed in the Special Master's report, POWERbahn argued Scholder does not disclose the following elements:

> **Element 6:** "a control system … configured to determine the virtual variable, at least in part, utilizing an equation of motion of the type that describes the acceleration of a mass under an influence of a force" (*see* D279, POWERbahn's Opposition at 30-32).

> **Element 7:** "the control system is configured to utilize the first value of the measured variable as an input variable in the equation of motion such that the resistance force varies in a manner that simulates changes in force due to changes in momentum according to the equation of motion" (*see* D279, POWERbahn's Opposition at 32-35).

Defendants' Reply did not respond to POWERbahn's arguments regarding the failure of Scholder to disclose these elements of claim 28. Nor did their Objections address these claim elements. Thus, there also exists at least a material question of fact as to whether Scholder discloses these additional claim elements.

19

**IV.    Defendants Contradict Even Their Own Expert in Asking the Court to Ignore the Plain Meaning of "Determining a Difference"**

Claim 28 recites "a control system … configured to *determine a difference* between the first value of the measured variable, and a first value of a virtual variable as a control input to control the resistance force on the user input member." Dkt. 262-4, '476 patent at 26:42-50. Defendants are wrong in accusing the Special Master of acting inconsistently with the Court's claim-construction order in finding that a fact issue exists as to whether POWERbahn's '253 publication discloses this element. The Court's claim-construction order did not address this element. The Special Master's conclusion that a fact issue exists regarding this claim element was based on the plain meaning of the phrase.

POWERbahn's expert opined that one of ordinary skill would understand that "determin[ing] a difference" involves subtraction (i.e., the measured value is subtracted from the virtual variable or vice-versa). D280-1, ¶140; D279-7, 229:13-230:18; D279-18, 21:10-22. Moreover, *Defendants'* expert likewise agreed during his deposition that the term "difference" involves subtraction:

> Q: Exhibit 8 is a definition of the term "difference" from the Visual Mathematics Dictionary, and . . . it defines difference as "the answer after one quantity is *subtracted* from another or the *amount by which* one quantity is greater or lesser than another."
> A: Correct.
> Q: Do you agree with that definition?

A: Sure.

D280-3, 22:7-15.

Defendants ignore their own expert's testimony in accusing the Special

Master of allowing POWERbahn's expert to rewrite the claim. Their argument also

ignores both the plain meaning of the term "difference" and its corresponding use

in the '476 patent. D279-7, 232:16-233:6; D280-1, ¶141. The '476 patent refers to

"the difference $\Delta$V between the measured velocity V and V(update)," which it

shows as being "*V*(update)–*V*." Dkt. 262-4, 18:61-67. This passage shows that "the

difference" is obtained via subtraction. Thus, both the specification and the

ordinary meaning of "difference" support the Special Master's conclusion.

While Defendants accuse the Special Master of adopting a meaning of

"determin[ing] a difference" at odds with the intrinsic record, it is they who

advocate an interpretation devoid of *any* meaningful evidence. Their motivation is

plain. The '865 patent does not disclose determining a difference between the

measured variable and the virtual variable. D280-1, ¶140. Defendants thus assert

that this claim element is satisfied by the '865 patent's disclosure of performing a

"greater than"/"less than" comparison of a target velocity to the actual velocity.

Dkt. 262-1, 26. Under the '865 patent's disclosure, if the target velocity is greater

than the current velocity, then the system will take steps to increase the velocity:

> The process begins with the reception of the target velocity $V_{set}$ from the CPU and the reception of the actual velocity V from the velocity sensor. . . . If the target velocity $V_{set}$ is positive 1712, then *a comparison is made 1775 between the target velocity $V_{set}$ and the actual velocity V, and if the target velocity $V_{set}$ is greater 1776 than the velocity V*, then the velocity V must be increased [and] . . . the *resistance applied by the brake 172 to the belt 110 is reduced* 1788 to allow the velocity V to increase.

D262-7, ¶¶272-73 (emphasis added). Conversely, if the target velocity is less than the current velocity, it will take steps to decrease the velocity:

> I*f, on comparison **1775** of the target velocity Vset with the actual velocity Vin the case where Vset is positive **1712**, it is determined that the target velocity Vset is less than 1777 the actual velocity V,* then the velocity V must be decreased [and] . . . *the power to the brake **172** is increased **1798** so that the brake **172** applies more friction and velocity V of the belt **110** is reduced.*

*Id*., ¶274 (emphasis added).

While Defendants assert that a "greater than"/"less than" comparison counts as "determin[ing] a difference," their expert agreed that the term "difference" refers to "the answer after one quantity is *subtracted* from another or the *amount by which* one quantity is greater or lesser than another." D280-3, 22:7-15. A greater than/less than comparison does not provide the *answer* after one quantity is *subtracted* from another. A greater than/less than comparison merely gives you a > or <. The preferred embodiment of the '865 patent needed nothing more because it involved progressively incrementing or decrementing the actual velocity toward

22

the target velocity. Dkt. 262-7, ¶270. In other words, the '865 patent's preferred embodiment only needed to decide whether to increase or decrease resistance and, for that purpose, a greater than/less than comparison was sufficient.

In contrast, the '476 patent claims something more specific. A greater than/less than comparison does not tell you the quantity remaining after one value is subtracted from another. But determining such a "quantity remaining" is exactly what the '476 patent recites in claim 28 and also discloses when it teaches using "the difference $\Delta V$ between the measured velocity V and V(update)" (which it describes as "$V$(update)–$V$") as a control input in controlling resistance force applied to the user input member. D262-4, 18:61-67; D280-1, ¶¶140-141.

In their Objections, Defendants argue for the first time that the specification uses the term "difference" more broadly and that to interpret the claim according to its ordinary meaning would exclude disclosed embodiments. D308, 16 (quoting D262-4, 11:35-37). This attorney argument finds no basis in Defendants' expert declarations. The Court should not consider this untimely argument.

Regardless, Defendants mischaracterize the passage they cite. This passage discloses that a "control input is generated by taking the difference between the measured velocity 71 and the virtual velocity 70." Dkt. 262-4, 11:30-32. Both the ordinary meaning of "difference" and the examples given in the '476 patent

establish that "taking the difference between" two numbers involves subtracting one from the other. Nothing in this passage suggests that "determining a difference" between two numbers involves merely a greater than/less than comparison. This is conclusively established later in this passage, where it states that the result of "taking the difference between the measured velocity 71 and the virtual velocity 70" is a "velocity difference value 89." *Id.*, 11:37-38. The term "value" refers to an actual number—the result after one number is subtracted from another. It does not refer merely to a > or <. This is further proven later in the same passage, when it states that "the velocity difference 89 between the measured velocity 71 and the virtual velocity 70 is multiplied by a relatively large number." *Id.*, 11:51-53. That the velocity difference value is multiplied by another number shows that the velocity difference is a specific number, not merely a > or <.

Defendants also argue that when this passage refers to "taking the difference between the measured velocity 71 and the virtual velocity 70," it means they are *added* together. It is not surprising that Defendants' expert did not make this argument. Not only does this flip the plain meaning of "taking the difference between" on its head, it finds no support in the '476 patent. Nowhere does the '476 patent refer to adding the measured velocity and the virtual velocity together for use as a control input. The whole point is to identify the *difference* between them

24

(i.e., subtracting one from the other) and use that *difference* to apply the
appropriate amount of resistance. Dkt. 262-4, 18:61-67. In this very passage, it
says that "these speed differences [i.e., the difference between the measured
velocity and the virtual velocity] are preferably *very small* as a result of the control
system." *Id.*, 11:46-48 (emphasis added). If this were talking about *adding* the
measured velocity and the virtual velocity, it would not describe the result as very
small. Even if a rider were traveling at the modest pace of 10 miles per hour, the
addition of the measured velocity plus the virtual velocity (which the '476 patent
indicates would be similar in value) would be about 20 miles per hour. Thus,
Defendants' argument makes no sense in the context of the passage.

Defendants' only support for this argument is that diagram element 88 in
Fig. 1A "is a typical symbol for a summation." D308, 16. This ignores that one of
the values is treated as a negative. This is expressly shown in Fig. 2 with respect to
the same diagram element 88. There, Fig. 2 clarifies that the measured velocity
(calculated based on the pedal rate times the gear rollout) is treated as a positive
value (indicated by the "+" sign) and that the virtual velocity is treated as a
negative (indicated by the "-" sign). Dkt 262-4, Fig. 2, 10:62. This is the same as
subtracting one from the other. This is also consistent with column 11's reference
to "taking the difference between" the measured velocity and the virtual velocity.

Respectfully submitted, this 23rd day of November, 2020.

*/s/ Cortney S. Alexander*

Daniel A. Kent
  dankent@kentrisley.com
  Tel:  (404) 585-4214
  Fax:  (404) 829-2412
Stephen R. Risley
  steverisley@kentrisley.com
  Tel:  (404) 585-2101
  Fax:  (404) 389-9402
Cortney S. Alexander
  cortneyalexander@kentrisley.com
  Tel:  (404) 855-3867
  Fax:  (770) 462-3299
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(C)</u>

I hereby certify that the foregoing has been prepared using one of the font and point selections approved by the Court in Local Rule 5.1(c). Specifically, this document was prepared using Times New Roman (14 point).

*/s/ Cortney S. Alexander*

1